* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were agreed upon by the parties at the hearing as:
 STIPULATIONS
l. That all parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter. *Page 2 
2. That all parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. That all parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. That the Plaintiff alleges to have sustained a compensable injury on February 6, 2006.
5. That an employment relationship existed between the Plaintiff and the Employer-Defendant.
6. Employee-Plaintiff's average weekly wage at the time of injury was $260.37.
 * * * * * * * * * * * ISSUE TO BE DETERMINED
Did the Plaintiff sustain a compensable injury by accident on February 6, 2007, and if so, to what benefits are she entitled?
 * * * * * * * * * * *
Based upon all of the evidence produced at the hearing, the Full Commission makes the following:
 FINDINGS OF FACT
1. On February 6, 2006, Plaintiff was employed by Employer-Defendant as a front end cashier. Plaintiff had worked for Employer-Defendant for the prior three months. Plaintiff had previously worked for Defendant in various positions.
2. On February 6, 2006, Plaintiff was assisting customers at the front cash register. When no customers were present, she assisted in the implementation of a planagram. A planagram is a diagram of the store and shelves indicating where various retail products are to be *Page 3 
placed. Implementing a planagram requires removing products and price stickers from the shelves, cleaning the shelves, and replacing products and price stickers where indicated on the planagram.
3. On February 6, 2007 after assisting a customer, Plaintiff went back to the aisle where the planagram was being implemented. She squatted down to stock the shelves. She was not carrying any items at the time.
4. Plaintiff reported the injury to a fellow employee on February 6, 2006.
5. Plaintiff continued to work following the injury.
6. Defendants denied the claim and have provided no benefits under the Workers' Compensation Act to date.
7. Plaintiff's duties as a front end cashier are to assist customers, checkout customers at the registers, stock the shelves with products, assist in implementing planagrams, and perform other duties as requested.
8. Plaintiff had assisted in implementing planagrams in the past. Stocking shelves and implementing a planagram are similar activities.
9. Dr. Mackel diagnosed Plaintiff with a medial meniscus tear on the left knee based on an MRI. Due to the diagnosis and MRI, Dr. Mackel performed an arthroscopy, chondroplasty, and partial medial meniscectomy of Plaintiff's left knee on March 29, 2006. The post-operative diagnosis was deep radial tear of the medial meniscus and significant articular cartilage breakdown and degeneration at the medial and lateral femoral condoyles.
10. Dr. Mackel opined that the meniscus tear was caused by a deep knee bend performed at work. As for the significant articular cartilage breakdown, this condition had been present for several years but there was some additional damage from the deep knee bend. *Page 4 
11. The surgery was successful and Plaintiff has recovered. Dr. Mackel found Plaintiff had reached maximum medical improvement in September 2006 and he assigned a ten percent (10%) permanent partial disability rating to Plaintiff's left knee.
12. Dr. Mackel was of the opinion that Plaintiff could return to her former position in May 2006, approximately two months following surgery. Dr. Mackel's only recommendation for Plaintiff was that she not perform deep knee bends.
13. At the time of her injury, Plaintiff squatted straight down from a standing position to a squatting position. There is no evidence that she overly exerted herself or engaged in unusual motions. The Plaintiff contends that because there was stock in the floor she had to squat with her feet closer together than normal.
14. Based upon the totality of the circumstances, the Full Commission finds that Plaintiff's left knee injury on February 6, 2006, is not compensable under the North Carolina Workers' Compensation Act. Plaintiff was performing her usual and customary assigned job duties in the normal and usual manner. *Page 5 
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that she experienced an injury by accident to her knee as required under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was injured while engaged in her normal and routine job duties in the normal and usual manner. An injury does not arise by accident when an employee is injured while performing her usual duties and tasks in the usual way. Evans v. Wilora Lake Healthcare,180 N.C. App. 337, 637 S.E.2d 194, 196, (2006).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 A W A R D
1. Plaintiff's claim for Workers' Compensation benefits under the North Carolina Workers' Compensation Act is hereby DENIED.
2. Each side shall bear its own costs except that Employer-Defendant shall pay for the deposition testimony of David F. Mackel, M.D. in the amount of $525.00, if not already paid by prior order.
This the __ day of April 2008.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
 CONCURRING: S/_____________ BUCK LATTIMORE
 COMMISSIONER S/_____________ PAMELA T. YOUNG COMMISSIONER *Page 1